1

2

3

4

5

6

7

8

9

10 **IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
11 **AT TACOMA**

| | |
|---|---|
| 12 MAUREEN MURPHY,<br>13     individually and on behalf of a class of<br>    similarly situated individuals;<br>14 JOHN HUDDLESTON,<br>    individually and on behalf of a class of<br>15     similarly situated individuals,<br>16<br>17                Plaintiffs,<br>18              v.<br>19 GINA RAIMONDO,<br>20     in her official capacity as Secretary of<br>    Commerce;<br>21 DEPARTMENT OF COMMERCE,<br>    a federal agency;<br>22 ROBERT SANTOS,<br>23     in his official capacity as Director of the<br>    Bureau of the Census;<br>24 BUREAU OF THE CENSUS,<br>    a federal agency,<br>24<br>26             Defendants. | Civil Action<br>No._____<br><br><br><br><br><br><br><br>**COMPLAINT — CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

27

28

**Introduction**

1. Each year census agents demand that millions of Americans answer detailed and highly personal questions about their lives.

2. This is not the normal ten-year Census, which is relatively simple and designed to count people for congressional districting. It is an unrelated survey called the American Community Survey, which gathers information not necessary for the Census.

3. Unlike the decennial Census, the American Community Survey is conducted every year and asks detailed and personal questions such as the person's sexual orientation, gender identity, fertility history, marital status, and divorce history. It asks about private health information, including the effect of medical and psychological conditions on the individual's daily activities. It asks how much taxes and utility bills the household pays. It even asks how many beds, cars, and washing machines the household has. The American Community Survey contains about 100 such questions.

4. Unlike the ten-year Census which everyone must answer, the Census Bureau selects a sample of a few million households each year to answer the American Community Survey. Individuals who refuse to answer this detailed questionnaire—which number in the thousands—are subject to fines of up to $5,000 per question.

5. Maureen Murphy and John Huddleston are two such individuals. They understand the importance of the decennial Census. They have in the past and will continue in the future to answer the ten-year Census. But they oppose the highly detailed and personal information demanded in the American Community Survey and have refused to answer it. As a result, they are subject to monetary fines for doing nothing more than keeping the private details of their lives private.

6. The Census Bureau lacks the statutory and constitutional authority to force individuals such as Ms. Murphy and Mr. Huddleston to answer the American Community Survey's detailed, intrusive questions.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

**Plaintiffs**

7.      Maureen Murphy is a United States citizen residing in the state of Washington within the geographical boundaries of the United States District Court for the Western District of Washington, and is over the age of 18.

8.      John Huddleston is a United States citizen residing in the state of California within the geographical boundaries of the United States District Court for the Eastern District of California, and is over the age of 18.

**Defendants**

9.      Gina Raimondo is the United States Secretary of Commerce, and she is sued in her official capacity.

10.      Robert Santos is the Director of the Bureau of the Census, and he is sued in his official capacity.

11.      The Department of Commerce is an agency of the United States.

12.      The Bureau of the Census is an agency of the United States.

13.      Each Defendant is charged with administering Title 13 of the United States Code and conducting the American Community Survey. Each Defendant, acting in their respective official capacities, has compelled Plaintiffs to answer the American Community Survey, told Plaintiffs in writing that they are required by law to answer the survey, and threatened them with monetary fines for refusing to answer it.

**Jurisdiction and Venue**

14.      There is federal-question jurisdiction and a federal cause of action under 28 U.S.C. §§ 1331 and 1343, and 5 U.S.C. §§ 702 and 703 because the Plaintiffs contend that the American Community Survey violates relevant federal statutes along with the nondelegation doctrine and Plaintiffs' fundamental rights to speech and privacy.

15.      This Court has the power to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. §§ 702 and 706, and Federal Rules of Civil Procedure 57 and 65.

16.     Venue in this district is proper under 28 U.S.C. §§ 1391(b)(2), 1391(b)(3), 1391(e)(1)(B), and 1391(e)(1)(C). A substantial part of the events or omissions giving rise to the claims occurred in this district. A substantial part of the property subject to the action is situated in this district. One of the Plaintiffs resides in this district. And all Defendants are subject to this Court's personal jurisdiction with respect to this action.

**Facts**

17.     Maureen Murphy lives in a house in Gig Harbor, Washington. She intends to stay at this house for the remainder of her life.

18.     Census Bureau agents visited Ms. Murphy's house at least three times in December 2021, and sent her at least two letters, Exhibit 1, Exhibit 2, and some brochures about the American Community Survey, Exhibit 5. Via this correspondence, Defendants told Ms. Murphy that she is required by U.S. law to answer the American Community Survey.

19.     John Huddleston lives in a house in Susanville, California. He intends to stay at this house for the remainder of his life.

20.     A Census Bureau agent visited Mr. Huddleston's house at least once in January 2022 and sent at least one letter to Mr. Huddleston's house, Exhibit 8. Defendants asked him to answer the American Community Survey and informed him that his response was required by law.

21.     The 2021 American Community Survey questionnaire that Defendants asked Ms. Murphy and Mr. Huddleston to answer is available on the Defendants' website and is attached as Exhibit 4.

22.     The American Community Survey compels Maureen Murphy and John Huddleston to give Defendants the following information:

      a.     the respondent's "race," including stating whether it is German, Irish, English, Italian, Lebanese, Egyptian, Jamaican, Haitian, Nigerian, Ethiopian, Somali, etc. Exhibit 4 at 2.

      b.     each household member's name, gender, age, and race, and the household members' relationships with each other. Exhibit 4 at 3–6.

c.    the house's description, year built, move-in date, acreage of land, number of rooms, and number of bedrooms. Exhibit 4 at 8.

d.    whether the house has hot and cold running water, a bathtub or shower, a sink with a faucet, a stove or range, a refrigerator, cellphones or landlines, and a desktop, laptop, smartphones, or tablets. Exhibit 4 at 9.

e.    whether the house has internet access, and whether the occupants access the internet using cellular data plan, broadband, satellite, dial-up, or some other service. Exhibit 4 at 9.

f.    the number of cars the occupants have. Exhibit 4 at 9.

g.    what fuel the house uses for heating, truthful dollar amounts for last month's electricity, gas, water and sewer, "oil, coal, kerosene, wood, etc." bills, and any monthly condominium fee. Exhibit 4 at 10.

h.    whether the occupants receive food stamps or other nutrition assistance. Exhibit 4 at 10.

i.    whether the occupants own or rent the house and the dollar amount for the monthly rent paid if the house is rented. Exhibit 4 at 10.

j.    opinion as to the current sale price of the house. Exhibit 4 at 11.

k.    actual dollar amounts for annual real estate taxes, fire, hazard, and flood insurance, and monthly mortgage payments. Exhibit 4 at 11.

l.    whether there is a second mortgage on the house and the dollar amount of the monthly second-mortgage payments. Exhibit 4 at 11.

m.    whether the occupants were born in the United States or elsewhere, whether they are United States citizens, the year they came to live in the United States, the highest level of education completed, and a description of their bachelor's degree major. Exhibit 4 at 12–13.

n.    how many and which languages they speak, and the previous full address where the occupants lived. Exhibit 4 at 13.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

o.  whether the occupants have health insurance through their current or former employer, or whether it is purchased directly from an insurance company, Medicare, Medicaid, TRICARE, VA, Indian Health Service, or any other type of health insurance coverage. Exhibit 4 at 13.

p.  whether there is a premium for the health insurance plan (which "does not include copays, deductibles, or other expenses such as prescription costs"), and whether the occupants receive a tax credit or subsidy based on family income. Exhibit 4 at 14.

q.  details of the occupants' physical, mental, or emotional conditions such as deafness or blindness, and any difficulty concentrating, remembering, making decisions, walking or climbing, dressing or bathing, or running errands. Exhibit 4 at 14.

r.  marital status, whether the occupants have been married, widowed, or divorced, how many times they have been married, and the year of their last marriage. Exhibit 4 at 14.

s.  fertility status and whether the occupants have had children in the past year, have minor grandchildren, or provide for the grandchildren's basic needs, and how long they have been providing for them. Exhibit 4 at 15.

t.  whether the occupants have served in the military, served in the military during specific periods, and their VA service-connected disability rating (given in percentages). Exhibit 4 at 15.

u.  whether the occupants worked at a job the previous week, the employer's full address, the occupants' method of commuting to work, whether they carpool, the hour and minute of starting commute, the commute time in minutes, and whether they have been laid off, temporarily absent from work, or furloughed. Exhibit 4 at 16.

v.  whether the occupants have been actively looking for work the previous week, the respondent's opinion on whether the occupants could have started

a new job if offered, the number of weeks they worked during the previous year, and the number of hours worked each week during the previous year. Exhibit 4 at 17.

w.   the name of the respondent's employer, a description of the employer's business or industry, the respondent's primary occupation, and a detailed job profile. Exhibit 4 at 17–18.

x.   the dollar amounts for total annual income for each of the following categories:

  i.   salary, commission, bonus, or tips,

  ii.   self-employment income,

  iii.   income earned from interest, dividends, rental, royalty, and estates and trusts,

  iv.   Social Security or railroad retirement income,

  v.   Supplemental Social Security Income,

  vi.   pensions, other retirement income, and any survivor or disability income, and

  vii.   any other income, including VA payments, unemployment compensation, child support, or alimony. Exhibit 4 at 18.

23.    Maureen Murphy and John Huddleston each have refused to answer the American Community Survey (Exhibit 4).

24.    Maureen Murphy and John Huddleston each will continue to refuse to answer the American Community Survey. Maureen Murphy and John Huddleston will not answer these or any other questions on the American Community Survey, now or in the future.

25.    Maureen Murphy and John Huddleston each have in the past answered and will continue in the future to answer the actual Census that occurs once every ten years. Maureen Murphy and John Huddleston have answered the 2020 decennial Census questionnaire, attached as Exhibit 7. The Census asks for (1) the number of people living in the dwelling, (2) whether the dwelling is owned, rented, or occupied without paying rent, (3) the respondent's phone number,

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

(4) the respondent's name, sex, age, Hispanic/Latino/Spanish origin, and race, and (5) each occupants' relationship to the respondent, sex, age, Hispanic/Latino/Spanish origin, and race.

26.    Defendants have stated on their:

a.    website (https://perma.cc/RWG3-TR77),

b.    in FAQ-style brochures (Exhibit 3), and

c.    in guidance documents (Exhibit 6; TAM CC-TAM-PMTA-00063 (IRS TASM), 1995 WL 17844611),

that answering the American Community Survey is mandated by law and refusal to answer carries criminal fines of up to $5,000.

**Statutory Background**

27.    The American Community Survey is different from the decennial or ten-year Census. The decennial Census is authorized by the Constitution's Enumeration Clause, which requires an "actual Enumeration" of persons in the United States every ten years in order to properly apportion congressional seats among the several states.  U.S. Const. art. I, § 2, cl. 3. In other words, to comply with the Constitution, the Census Bureau must count the actual number of persons in the United States. Accordingly, sampling, which is a method for estimating the number of people in a particular category by questioning only a subset of them, is forbidden for use in place of an actual enumeration in the decennial Census. *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 343 (1999). Sampling can be used to supplement or check for errors in the actual enumeration required by the Constitution, but such surveys must be necessary for enumeration.

28.    In contrast to the decennial Census, the American Community Survey is exclusively a sampling survey (Exhibit 3, Exhibit 6). The American Community Survey is not part of or related to the Census in any way. Instead, its purpose is to provide "demographic, social, economic, and housing estimates" "needed to assess a variety of programs," Exhibit 3, so that government entities, nongovernmental organizations, and businesses can "distribute resources," Exhibit 5 at 2.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

29.     As authority to conduct the American Community Survey, Defendants rely on three statutes: 13 U.S.C. §§ 141, 193, 221.

     a.    Section 141 allows Defendants to "take a decennial census of population," and "[i]n connection with any such census," "authorize[s]" Defendants "to obtain such other census information as necessary."

     b.    Section 193 gives Defendants the authority to "make surveys and collect such preliminary and supplementary statistics related to the main topic of the census as are necessary to the initiation, taking, or completion thereof."

     c.    Section 221 states that if someone "refuses or willfully neglects" "to answer" "any census or survey," then that person "shall be fined not more than $100."

30.     Defendants claim that they have statutory authority to compel Plaintiffs to answer the American Community Survey. But the statutory authorization to "collec[t]" information does not give Defendants the power to compel the production of information from Plaintiffs, especially since the information Defendants demand through the American Community Survey is not necessary for the ten-year Census.

31.     The two statutes, 13 U.S.C. §§ 141, 193, at most give the Defendants the authority to conduct a post-census statistical adjustment to ensure the accuracy of the decennial Census. They do not give the Defendants the limitless power to compel Plaintiffs to produce personal information or opinions to Defendants.

32.     If Sections 141 and 193 are read to authorize the American Community Survey, there is no limiting principle as to what "information" the Defendants can compel Plaintiffs to provide "annually or less frequently" through "surveys" such as the American Community Survey.

33.     Defendants claim that those refusing to answer the American Community Survey may be found guilty of a criminal infraction and be required to pay a monetary fine.

34.     Defendants rely on 13 U.S.C. § 221 to inform the Plaintiffs that their "refus[al] … to answer … any of the questions on" the American Community Survey is subject to a "fin[e of]

not more than $100." But nothing in 13 U.S.C. § 221 states that the fine for refusal to answer the questions appearing in the American Community Survey is a *criminal* offense. The penalty provision, 13 U.S.C. § 221, does not give Defendants the authority to define refusal to answer the American Community Survey as a criminal offense.

35. Defendants rely on the criminal statutes, 18 U.S.C. §§ 3559, 3571 (Exhibit 3, Exhibit 6), to assert that the fine imposed by 13 U.S.C. § 221 is a criminal fine and to unilaterally increase the fine fifty-fold to $5,000 from $100. *See* Exhibit 3 at 2. Worse still, this change is announced in an FAQ-style guidance document (Exhibit 3), not through any rulemaking procedure. Defendants are using and have used this threat of fines to compel individuals like Plaintiffs to disclose their private information and opinions to them.

36. Nothing in 13 U.S.C. §§ 141, 193, 221 and 18 U.S.C. §§ 3559, 3571 grants Defendants the authority to redefine the refusal-to-answer statutory violation as a crime and enhance the penalty fifty-fold. Nothing in these statutes gives Defendants the authority to compel Plaintiffs to divulge the information the American Community Survey demands. Nothing in these statutes gives Defendants the authority to compel Plaintiffs to speak when Plaintiffs invoke their First Amendment right to refrain from speaking by refusing to answer the American Community Survey. Nothing in these statutes gives Defendants the authority to invade Plaintiffs' fundamental right of privacy by compelling Plaintiffs to divulge Plaintiffs' personal information to Defendants.

**Plaintiffs Are Harmed by Defendants and Those Injuries Are Redressable in Federal Court**

37. Defendants have compelled, are compelling, and will continue to compel Maureen Murphy and John Huddleston to answer the American Community Survey under the threat of imposing monetary fines.

38. Defendants have harmed Plaintiffs because they are being compelled to disclose personal information that the Defendants have no authority to compel.

39. Defendants have also harmed Plaintiffs by intruding upon their privacy and compelling them to speak. Defendants' written threat of prosecution is sufficient to deter a person of ordinary firmness such as Maureen Murphy and John Huddleston from exercising their constitutional rights to privacy and silence.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

40.    Defendants' actions have injured Maureen Murphy and John Huddleston because they are now forced to choose between paying a fine for exercising their rights or giving up their rights.

41.    Defendants' actions have caused and will cause Maureen Murphy and John Huddleston to spend time, effort, and money to review instructions, search personal records, collect relevant information, and prepare to transmit or otherwise disclose information to Defendants in the event they have to answer the American Community Survey. Defendants have imposed costly, self-executing compliance burdens on Plaintiffs.

42.    Each American Community Survey question Defendants have asked Maureen Murphy and John Huddleston to answer causes a separate injury. Each question they refuse to answer makes them potentially liable for up to $5,000 in criminal fines. *National Urban League v. Ross*, 489 F. Supp. 3d 939, 975 (N.D. Cal. 2020) (stating that "each unanswered question risks an additional fine" under 13 U.S.C. § 221) (simplified); *see* Exhibit 3 at 2.

**Declaratory Relief**

43.    There is an actual and substantial controversy between the Plaintiffs and Defendants over the latter's failure to comply with the operative statutes. Defendants have determined that Plaintiffs must answer the American Community Survey or else pay monetary fines.

44.    This controversy is currently justiciable because Defendants' failure to comply with the operative statutes has caused and will continue to cause Plaintiffs immediate and concrete injury. The Plaintiffs are currently and continuously injured by Defendants' letters (Exhibit 1, Exhibit 2, Exhibit 8) because their issuance and the threat of enforcement the letters contain will continue to force Plaintiffs to alter their ordinary course of conduct and behavior (including records retention practices, setting aside a sum of money to cover the risk of fines, spending money to collect records necessary to answer the survey questions truthfully), and subject them to fines if they do not comply with Defendants' demand for production of private information and opinions. Plaintiffs have already suffered specific injuries because of Defendants' letters and the threat of enforcement contained therein, which injuries will continue.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

45.     Absent a declaration that refusal to answer the American Community Survey leads to no adverse legal consequences flowing to the Plaintiffs, the risk of monetary penalties payable by Plaintiffs will continue to persist. Plaintiffs' rights and legal obligations will remain uncertain absent declaratory relief. Defendants' conduct and the letters Defendants sent Plaintiffs each create an actual controversy between Plaintiffs and Defendants as to the rights, status, and consequences of actions either would take now and in the future.

46.     Declaratory relief is, therefore, appropriate to resolve this controversy.

**Injunctive Relief**

47.     If an injunction does not issue enjoining Defendants from compelling Plaintiffs to answer the American Community Survey, the Plaintiffs would be irreparably harmed. Plaintiffs are currently and continuously injured by the issuance of the Defendants' letters (Exhibit 1, Exhibit 2, Exhibit 8) compelling Plaintiffs' compliance.

48.     Plaintiffs have no plain, speedy, and adequate remedy other than declaratory and injunctive relief.

49.     If not enjoined, Defendants will continue to enforce, threaten to enforce, and continue to compel Plaintiffs to produce information and opinions by answering the American Community Survey, all in derogation of Plaintiffs' rights.

50.     Accordingly, injunctive relief is appropriate.

**Class Action Allegations**

51.     Each named Plaintiff sues individually and as a class representative under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of all persons who refuse to answer the American Community Survey.

52.     The class includes all persons whom Defendants require to answer the American Community Survey but who have or will refuse to answer it. Defendants injure all class members to the same extent that the named Plaintiffs are injured.

53.     Named Plaintiffs are adequate class representatives because they belong to the class of persons who have refused to answer or will refuse to answer the American Community Survey.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

54.    According to Defendants' data, the class includes thousands of individuals across the country. *See* https://perma.cc/RWG3-TR77. The class, therefore, meets the numerosity requirement.

55.    The class is so numerous that the joinder of all members is impractical. Only an injunctive class as defined can shut down Defendants' unlawful compulsion, confine Defendants' actions within the limits of operative statutes, avoid casting doubt on the constitutionality of the operative statutes, and vindicate the constitutional rights of the members of the class.

56.    There are common questions of law and fact that unite the class, including:

    a.    Whether the Defendants have the statutory authority to compel individuals to divulge information that the American Community Survey demands;

    b.    Whether there is a violation of the nondelegation doctrine if the statutes were read to delegate to the Defendants the authority (i) to compel the production of information, and (ii) to disregard the class members' individual and fundamental rights to speech and privacy;

    c.    Whether there is a violation of the nondelegation doctrine when the Defendants redefine a statutory violation as a crime, enhance the penalty, and then threaten class members with such fines when they refuse to answer the American Community Survey;

    d.    Whether Defendants violate class members' First Amendment rights;

    e.    Whether Defendants violate class members' fundamental right to privacy.

57.    The claims brought by the named Plaintiffs are typical of the class, and the named Plaintiffs will fairly and adequately protect the interests of the class.

58.    The relief sought is appropriate for the class as a whole because Plaintiffs demand declaratory and injunctive relief against Defendants prohibiting Defendants from compelling Plaintiffs and class members to answer the American Community Survey or risk monetary fines for refusing to answer. This relief equally impacts the entire class.

# Claims for Relief

## Count 1:

### Defendants' Actions (Compulsion) Are *Ultra Vires* and Beyond Their Statutory Authority

59. Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

60. Defendants have the authority to conduct the ten-year Census and minor statistical adjustments to ensure the accuracy of the Census. But the American Community Survey is neither the Census nor a statistical adjustment to the Census.

61. Defendants and their officers or employees acted against Plaintiffs in their official capacity under the color of federal statutes, 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571.

62. These provisions only allow Defendants to conduct a survey. They do not allow Defendants to compel individuals to answer such surveys.

63. But Defendants have directed and compelled Plaintiffs and others to answer the American Community Survey under threat of thousands of dollars in fines for each unanswered question.

64. Agencies have no inherent power to make law. Like all federal agencies, Defendants get their authority to act from Congress. Defendants have no power to act unless and until Congress confers power upon them. *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 374 (1986). Actions taken without statutory authority are *ultra vires*.

65. Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

66. Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

## Count 2:

### Defendants' Actions (Penalty) Are *Ultra Vires* and Beyond Their Statutory Authority

67.    Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

68.    Defendants and their officers or employees acted against Plaintiffs in their official capacity under the color of federal statutes, 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571.

69.    These statutes do not authorize Defendants to redefine the refusal-to-answer violation as a crime and impose a penalty enhancement by amending the $100 fine to a $5,000 fine. Actions taken without statutory authority are *ultra vires*.

70.    Criminalizing a statutory fine is permissible only if the statute itself explicitly so provides. *United States v. Alghazouli*, 517 F.3d 1179, 1184 (9th Cir. 2008). The statute, 13 U.S.C. § 221, does not provide so here because Congress specifically *decriminalized* it. *See* 90 Stat. 2465 (1976).

71.    The crime-classifying statute, which classifies a pre-existing crime for which "no imprisonment is authorized, as an infraction" and sets the fine of "not more than $5,000" "for an infraction," does not suspend, supersede, or otherwise amend 13 U.S.C. § 221(a), and is not otherwise applicable. 18 U.S.C. §§ 3559(a)(9), 3571(b)(7).

72.    Defendants have threatened Plaintiffs with fines of up to $5,000 for refusing to answer the American Community Survey.

73.    Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

74.     Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

**Count 3:**

**13 U.S.C. §§ 141, 193, 221 Violate the Article I, § 1**

**Vesting Clause and the Nondelegation Doctrine**

75.     Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

76.     Article I, § 1 of the United States Constitution (emphasis added), states: "*All* legislative Powers herein granted shall be vested in a Congress of the United States." ("Vesting Clause").

77.     The Supreme Court has interpreted the Vesting Clause to mean that any delegation of authority to an agency must have an intelligible principle.

78.     If the relevant statutes are read to grant Defendants the authority to compel answers to the American Community Survey, then it is an open-ended grant of authority with no intelligible principle.

79.     The relevant statutes, 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, provide no limiting or intelligible principle to which Defendants are directed to conform when carrying out their functions. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). The statutes fail to provide a guiding principle and instead delegate to the agency authority to compel Plaintiffs to provide any information Defendants demand from them. As a result, the statutes are invalid because they violate the Vesting Clause. *Id.*

80.     Alternatively, if 13 U.S.C. §§ 141, 193, 221 supply a sufficient intelligible principle, then the doctrine must be reexamined to adhere to the proper limits in the Vesting Clause of Article I, § 1.

81.     Any delegation is also invalid because delegation to agencies is valid only if private rights are protected. *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). Here,

Defendants' interpretation and implementation of the statutes violates Plaintiffs' rights to privacy and to silence.

82.     Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

83.     Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

**Count 4:**

**13 U.S.C. § 221, and 18 U.S.C. §§ 3559, 3571**

**Violate the Article I, § 1 Vesting Clause and the Nondelegation Doctrine**

84.     Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

85.     Article I, § 1 of the United States Constitution (emphasis added), states: "*All legislative Powers herein granted shall be vested in a Congress of the United States.*" ("Vesting Clause").

86.     Defendants cannot criminalize conduct on their own initiative. Congress must be precise when it authorizes criminal sanctions, consistent with the rule of lenity.

87.     If the statutes (13 U.S.C. § 221, and 18 U.S.C. §§ 3559, 3571) are read broadly to give Defendants the power to criminalize the refusal-to-answer violation and enhance the criminal penalty, then the statutes delegate authority in violation of the Vesting Clause.

88.     Plaintiffs' refusal to divulge personal information to Defendants and choose to stay silent is *not* criminal behavior. It is the exercise of one's constitutional right to privacy and the right not to be compelled to speak. It violates the nondelegation doctrine if Defendants can criminalize any behavior and enhance the applicable penalty.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

89.    Alternatively, if 13 U.S.C. § 221, and 18 U.S.C. §§ 3559, 3571 supply a sufficient intelligible principle, then the doctrine must be reexamined to adhere to the proper limits contained in the Vesting Clause of Article I, § 1.

90.    Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

91.    Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

**Count 5:**

**Defendants, Via the American Community Survey,**

**Compel Plaintiffs to Speak in Violation of the First Amendment**

92.    Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

93.    The First Amendment freedom of speech includes both the right to speak freely and the right to refrain from speaking at all.

94.    Plaintiffs' personal information is private and protected by the First Amendment, so Defendants cannot compel Plaintiffs to divulge that information to Defendants without satisfying the First Amendment.

95.    Compelled disclosure of information to the government violates the First Amendment even if there is no disclosure to the general public. *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021). When a government entity mandates speech that a speaker would not otherwise make, it necessarily alters the content of the speech. *Riley v. Nat'l Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 795 (1988). Such compelled disclosure must meet strict scrutiny.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

96.    Defendants' actions compelling Plaintiffs to answer the American Community Survey do not satisfy any level of scrutiny under the First Amendment.

97.    The American Community Survey asks for highly personal and private information. It requires Plaintiffs to disclose sensitive and personal facts and opinions about themselves and their family members or face fines if they refuse.

98.    Because 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, and Defendants' actions taken thereunder, fail to satisfy the First Amendment, these sections and Defendants' actions taken thereunder violate Plaintiffs' right to freedom of speech.

99.    Defendants lack authority to compel Plaintiffs to answer the American Community Survey because 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, are unconstitutional as applied.

100.    Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

101.    Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

**Count 6:**

**Defendants, Via the American Community Survey,**

**Unconstitutionally Invade Plaintiffs' Fundamental Right to Privacy**

102.    Plaintiffs incorporate by reference all of the preceding paragraphs as though fully set forth here.

103.    The right to personal privacy is fundamental. The right to privacy is derived from the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments, and is grounded in the right to liberty and property in one's personal information.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

104.    The right to privacy is the right of the individual to be free from unwarranted governmental intrusion. *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972). Government action limiting, invading, or abridging the right to privacy must be justified by a compelling state interest. The legislative enactments must be narrowly drawn to express only legitimate state interests.

105.    Plaintiffs' personal information is private, so Defendants cannot compel Plaintiffs to divulge that information to Defendants and thereby invade their privacy without satisfying strict scrutiny. Plaintiffs want to keep their personal information private and not turn it over to Defendants.

106.    Defendants' actions compelling Plaintiffs to answer the American Community Survey do not satisfy any level of scrutiny.

107.    The American Community Survey violates Plaintiffs' Fourth Amendment right to privacy because Defendants compel Plaintiffs to divulge information that would otherwise not be available to Defendants without trespassing upon and searching Plaintiffs' homes, papers, and effects. Defendants obtain Plaintiffs' intimate details by means of a compulsory questionnaire in the absence of probable cause, a warrant, or an exception to the Fourth Amendment. Defendants force Plaintiffs to conduct a search upon their own papers and effects, question other occupants of their home, and turn over the gathered information to Defendants.

108.    Plaintiffs have refused and will continue to refuse to answer the American Community Survey. They have not and will not voluntarily turn over information about themselves or their household to Defendants beyond what is required for actual enumeration once every ten years.

109.    The relevant statutes, 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, and Defendants' actions taken thereunder, unconstitutionally invade Plaintiffs' privacy.

110.    Defendants lack authority to compel Plaintiffs to answer the American Community Survey because 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, are unconstitutional as applied.

111.    Defendants' interpretation of the relevant statutes and the actions Defendants took against Plaintiffs in pursuance thereof are arbitrary, capricious, an abuse of discretion, and

otherwise not in accordance with law. Defendants' interpretation and actions taken thereunder are contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

112.    Plaintiffs therefore demand declaratory and injunctive relief, including an order enjoining Defendants now and in the future from compelling Plaintiffs to answer the American Community Survey, imposing any monetary fine on Plaintiffs for refusing to answer the survey, or otherwise taking any legal action against Plaintiffs for refusing to answer the survey.

**Jury Trial Demanded**

113.    Plaintiffs demand a trial by jury for all issues so triable.

**Request for Relief**

For all of the reasons stated above, Plaintiffs request relief as follows:

A.    Certify the class as defined.

B.    Declare that the Plaintiffs are not subject to fines or otherwise under any compulsion to answer the American Community Survey; that no adverse legal consequences will flow from their decision not to answer the American Community Survey.

C.    Declare the meaning of operative statutes, 13 U.S.C. §§ 141, 193, 221, and 18 U.S.C. §§ 3559, 3571, as not granting Defendants the authority (i) to compel Plaintiffs to produce information that the American Community Survey demands; (ii) to redefine a statutory violation as a crime, enhance the statutory penalty from $100 to $5,000, and then threaten individuals with monetary fines when they refuse to answer the American Community Survey; and/or (iii) to disregard Plaintiffs' constitutional rights to speech and privacy.

D.    Enjoin Defendants now and in the future from requiring Plaintiffs to answer the American Community Survey.

E.    Enjoin Defendants now and in the future from imposing any monetary fine on Plaintiffs for refusing to answer the American Community Survey.

F.    Enjoin Defendants now and in the future from otherwise taking any adverse action against Plaintiffs for refusing to answer the American Community Survey.

G.    Award attorneys' fees, expenses, and costs.

Pacific Legal Foundation, 255 South King Street, Suite 800
Seattle, Washington 98104 | (425) 576-0484

1    H.    Award such other relief as the Court deems just and proper.

2    DATED:  May 24, 2022.

3    Respectfully submitted:

4

5    s/ *Brian T. Hodges*_____          ADITYA DYNAR
     BRIAN T. HODGES                         DC Bar No. 1686163*

6    WSBA No. 31976                          Pacific Legal Foundation
     Pacific Legal Foundation                3100 Clarendon Blvd., Ste. 610

7    255 South King Street, Suite 800        Arlington, VA 22201

8    Seattle, WA 98104                       Telephone: (202) 807-4472
     Telephone: (425) 576-0484              Email: ADynar@pacificlegal.org

9    Email: BHodges@pacificlegal.org
                                             MICHAEL POON
10                                           CA Bar No. 320156*

11                                           Pacific Legal Foundation
                                             555 Capitol Mall, Ste. 1290

12                                           Sacramento, CA 95814

13                                           Telephone: (916) 419-7111
                                             Email: MPoon@pacificlegal.org

14

15                                           *\* pro hac vice applications forthcoming*

16                               *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

24

26

27

28