UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAUREEN MURPHY individually and on behalf of a class of similarly situated individuals; JOHN HUDDLESTON, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br>v.<br><br>GINA RAIMONDO et al,<br><br>Defendants. | CASE NO. 3:22-cv-05377-DGE<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 22) AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. NO. 26) |

## I   INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, the Court finds Plaintiffs Maureen Murphy and John Huddleston's claims are not ripe and as such GRANTS Defendants' motion for summary judgment (Dkt. No. 22). The Court also DENIES Plaintiffs' cross-motion for summary

judgment (Dkt. No. 26) and DENIES as moot Plaintiffs' motion for class certification (Dkt. No. 12).

## II      BACKGROUND

Plaintiffs bring this suit challenging the constitutionality of the Census Bureau's ability to compel Americans' responses to the American Community Survey ("ACS"). The ACS "is a nationwide survey that collects and produces information on social, economic, housing, and demographic characteristics about our nation's population every year." (Dkt. No. 22-2 at 4.) Various federal, state, and local agencies rely on the information collected by the ACS to allocate sparse funds and to effectively provide needed services. (Dkt. No. 22-1 at 2.) The ACS was implemented in 2005 and replaced the "long form" decennial census, which collected similar information. (*Id.*)

13 U.S.C. § 141 directs the Secretary of Commerce to:

> in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year, which date shall be known as the "decennial census date", in such form and content as he may determine, **including the use of sampling procedures and special surveys**. In connection with any such census, **the Secretary is authorized to obtain such other census information as necessary.**

13 U.S.C. § 141(a) (emphasis added). 13 U.S.C. § 193 further provides "[i]n advance of, in conjunction with, or after the taking of each census provided for by this chapter, the Secretary may make surveys and collect such preliminary and supplementary statistics related to the main topic of the census as are necessary to the initiation, taking, or completion thereof." *Id.*

The Census Bureau considers completion of the ACS to be mandated by law and failure to complete the ACS to constitute a criminal offense. The Census Bureau cites to 13 U.S.C. § 221 and 18 U.S.C. §§ 3571, 3559 in informational materials as providing the legal basis for imposing criminal penalties on those who refuse to complete the ACS. (*See, e.g.*, Dkt. No. 1-3 at

3).  These penalties can range as high as $5,000 per violation, but do not carry with them any corresponding prison time.  *See, e.g.*, 13 U.S.C. § 221.

Participants in the ACS are selected via a random sample of addresses.  (Dkt. No. 22-1 at 3.)  Questionnaires are sent to a random assortment of addresses annually and the information collected is used in the five-year ACS data.  (*Id.*)  Murphy and Huddleston received the ACS questionnaire in 2021 and 2022 respectively.  (Dkt. Nos. 27 at 2; 28 at 2.)  To ensure completion of the questionnaire, the Census Bureau sends reminder mailings to addresses from which the agency has received no response.  (Dkt. No. 22-1 at 3.)  Census Bureau agents may also visit select non-responsive households in-person to encourage completion.  (*Id.* at 3–4.)  Defendants assert "Census Bureau field representatives are instructed never to antagonize, threaten, or frighten respondents by emphasizing the illegality of not responding or by quoting fines or penalties for refusing to participate."  (*Id.* at 5.)  Plaintiffs allege and assert via affidavit they either received correspondence or were visited in person by Census Bureau agents to encourage them to complete the ACS.  (Dkt. Nos. 27 at 2; 28 at 3.)  No one has ever been prosecuted for failing to complete the ACS and no individuals have been prosecuted for failing to complete the long form census since the 1970s.  (Dkt. No. 22-1 at 7.)

On May 24, 2022, Plaintiffs filed suit against Secretary of Commerce Gina Raimondo, the Department of Commerce, Director of the Bureau of Census Robert Santos, and the Bureau of Census (together the "Defendants" or the "Census Bureau").  (Dkt. No. 1.)  Plaintiffs seek declaratory relief and injunctive relief to ensure they are not compelled to answer the ACS.  (*Id.* at 12.)  They claim the Census Bureau's actions are *ultra vires*, the statutes that authorize the Census Bureau to conduct the ACS violate the non-delegation doctrine, and that the ACS compels speech in violation of the First Amendment and invades the Plaintiffs' rights to privacy.

1  (*See generally id.* at 14–21.)  Plaintiffs also seek relief on behalf of a class of similarly situated

2  individuals and have filed a motion for class certification.  (Dkt. No. 12.)

3  **III     DISCUSSION**

4  A.  **Legal Standard**

5  A court "shall grant summary judgment if the movant shows that there is no genuine

6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

7  R. Civ. P. 56(a).  "The deciding court must view the evidence, including all reasonable

8  inferences, in favor of the non-moving party."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir.

9  2017).  "Only disputes over facts that might affect the outcome of the suit under the governing

10 law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant

11 or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

12 Additionally, "[t]he party invoking federal jurisdiction bears the burden of establishing

13 these elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At summary judgment,

14 the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes

15 of the summary judgment motion will be taken to be true."  *Id.* (citation omitted).

16 B.  **Ripeness**

17 Federal courts' jurisdiction pursuant to Article III extends only to "cases" and

18 "controversies."  *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir.

19 2007).  Courts do not "wade into disputes that would require us to 'issue advisory opinions' or

20 'declare rights in hypothetical cases.'"  *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022)

21 (quoting *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018)).  Concerns over the

22 justiciability constraints of Article III have given rise to several doctrines federal courts use to

23

24

determine whether they may properly hear a case before them.  *See, e.g.*, *Trump v. New York*, 141 S. Ct. 530, 535 (2020).  Chief among these are the doctrines of ripeness and standing.

The ripeness doctrine seeks to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967).  "Ripeness has both constitutional and prudential components." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).  Ripeness's constitutional elements are often conflated with those of standing and ripeness is often "characterized as standing on a timeline." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  Prudential ripeness, by contrast, assesses "the fitness of the issues for judicial review, followed by the hardship to the parties of withholding court consideration." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012).

**1. Constitutional Component**

Courts often treat the constitutional components of ripeness the same as those of standing.  *See, e.g.*, *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021).  To establish ripeness in a pre-enforcement challenge, "'the plaintiff must be subject to a genuine threat of imminent prosecution.'" *Union Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 918 (W.D. Wash. 2018) (quoting *Wolfson*, 616 F.3d at 1058).  To determine if a plaintiff is subject to a genuine threat of imminent prosecution, courts must assess "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute." *Wolfson*, 616 F.3d at 1058.

      a.   <u>Concrete Plan to Violate the Law</u>

The parties do not dispute the first *Thomas* factor is satisfied here. (*See* Dkt. Nos. 22 at 20–22; 26 at 40.) Plaintiffs have refused to complete the ACS, in violation of 13 U.S.C. § 221(a). However, the parties do dispute whether the Census Bureau has communicated a "specific" warning or threat of prosecution to the Plaintiffs as well as the relevance of past prosecution under the statute to the Court's analysis.

b.  Specific Warning or Threat

Defendants argue courts have consistently held as unripe cases when "there was no specific threat of enforcement or history of prosecution under the relevant statutes." (Dkt. No. 22 at 20.) Specifically, they argue the Census Bureau and its agents never subjected Plaintiffs to a specific threat of enforcement. (*Id.* at 22.) Defendants submit a declaration from Donna Dailey, Chief of the ACS, who asserts "the Census Bureau does not threaten non-responding addresses with the enforcement of fines or with referral to DOJ for prosecution" and that the contacts described in Plaintiffs' complaint are consistent with the procedures used by the ACS to encourage completion of the survey. (Dkt. No. 22-1 at 4, 6.) Dailey also asserts "[i]n the history of the ACS, no one has ever been prosecuted for failing to respond to the ACS" and that "the Census Bureau has never referred anyone to DOJ for prosecution and DOJ has never prosecuted anyone for failing to respond to the ACS." (*Id.* at 7.)

In response, Plaintiffs argue the Defendants did communicate a specific threat of prosecution to the Plaintiffs. Plaintiffs declare that a specific threat of enforcement was communicated to Plaintiffs (Dkt. No. 26 at 40), referring the Court to a brochure assembled by the ACS that notes that persons who refuse to complete the ACS can be fined up to $5,000. (*See* Dkt. No. 1-3 at 3.) Plaintiffs also argue there is a history of criminal enforcement under the

statute, pointing to the prosecution of five individuals who refused to complete the long form census. (*See* Dkt. Nos. 22-1 at 7; 26 at 40.)

The Court agrees with the Defendants that Plaintiffs are not subject to a genuine threat of prosecution and thus their claims are not ripe for review. Plaintiffs have not presented any evidence Defendants communicated a specific threat of prosecution for failure to complete the ACS. Defendants' correspondence with the Plaintiffs consists of the following interactions:

> Census Bureau agents visited Ms. Murphy's house at least three times in December 2021, and sent her at least two letters, Exhibit 1, Exhibit 2, and some brochures about the American Community Survey, Exhibit 5. Via this correspondence, Defendants told Ms. Murphy that she is required by U.S. law to answer the American Community Survey.
>
> A Census Bureau agent visited Mr. Huddleston's house at least once in January 2022 and sent at least one letter to Mr. Huddleston's house, Exhibit 8. Defendants asked him to answer the American Community Survey and informed him that his response was required by law.

(Dkt. No. 1 at 4.) Plaintiffs do not allege Census Bureau representatives directly threatened them with prosecution, nor do they submit affidavits to that effect. Exhibits 1, 5, and 8, as mentioned in Plaintiffs' complaint, contain no specific threat of prosecution but merely mention Plaintiffs are "required by law" to respond to the ACS. (*See generally* Dkt. Nos. 1-1, 1-5, 1-8.)

Plaintiffs' declarations also do not support a finding they were subject to a genuine threat of imminent prosecution. Neither Ms. Murphy nor Mr. Huddleston state they were threatened with prosecution by Census Bureau agents. Ms. Murphy, for example, asserted only she received communications from a Census Bureau agent she was required by law to complete the ACS. (*See* Dkt. No. 27 at 2–3.) Ms. Murphy also asserted the document attached as Exhibit 2 to Plaintiffs' complaint "threatened me that the Census Bureau has the support of federal law to require me to complete the American Community Survey." (*Id.* at 3.) Put simply, there is no indication in this communication of any "threat" directed towards Ms. Murphy. Indeed, Exhibit

1  2 does not even include the language of prior communications that a response is "required by

2  U.S. law." (*See, e.g.*, Dkt. No. 1-1 at 2.)  Mr. Huddleston, similarly, notes only that he received a

3  communication from the Census Bureau that his response to the ACS was "required by U.S.

4  law." (Dkt. No. 28 at 2.)  Mr. Huddleston also complained that communications from the

5  Census Bureau directed him to Exhibit 3 of the complaint, which contained "the same threat that

6  if I don't answer the American Community Survey then they will come to my house and ask me

7  to pay a fine if I refuse to answer." (*Id.*)  Exhibit 3 does note the possibility of criminal fines for

8  failure to respond to the ACS (*see* Dkt. No. 1-3 at 3) but does not direct a specific threat at Mr.

9  Huddleston or any individual.

10        These general statements and communications fall short of the threshold necessary to

11 constitute a "specific" threat of prosecution.  "Neither the 'mere existence of a proscriptive

12 statute' nor a 'generalized threat of prosecution' satisfies the 'case or controversy' requirement."

13 *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139).  While Plaintiffs need not "await

14 arrest or prosecution before entertaining a challenge to the constitutionality of a statute . . . the

15 threat of enforcement must at least be 'credible.'"  *Thomas*, 220 F.3d at 1140.  "Allegations of a

16 subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a

17 threat of specific future harm."  *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

18        Courts regularly find generalized assertions of fear of prosecution to be insufficient to

19 satisfy the second *Thomas* factor.  *See, e.g.*, *Rincon Band of Mission Indians v. San Diego Cnty.*,

20 495 F.2d 1, 4 (9th Cir. 1974) (holding allegations that members of sheriff's office informed

21 plaintiffs gambling was illegal under county law and they would enforce all county laws was

22 "clearly of a general nature."); *Beram v. City of Sedona*, 587 F. Supp. 3d 948, 955 (D. Ariz.

23 2022) (finding direct verbal warning to plaintiff of the potential for prosecution did not constitute

24

a specific warning or threat); *Donovan v. Vance*, 576 F. Supp. 3d 816, 824 (E.D. Wash. 2021) (finding plaintiffs' challenge to employer vaccine mandate was not ripe in part because "Plaintiffs do not allege they have received any communication that employment termination is imminent."); *Ass'n of Am. R.R. v. California Off. of Spill Prevention & Response*, 113 F. Supp. 3d 1052, 1060 (E.D. Cal. 2015) (finding repeated communications from a California state agency advising the plaintiffs of the impending implementation of regulations was not a "specific warning or threat."); *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1129 (C.D. Cal. 2012) ("Plaintiff does not allege that he . . . has received any specific warning, directed to him, that he will be prosecuted if he openly carries a loaded firearm in public."); *Arizona v. United States*, No. CV 11-1072-PHX-SRB, 2012 WL 13059795, at *4 (D. Ariz. Jan. 4, 2012) (finding communication from federal prosecutors to various state officials that state licensing of medical marijuana facilities would violate federal law is not a specific threat or warning because "[p]laintiffs have not shown that any action against state employees in this state is imminent or even threatened.").

As in *Rincon*, all Plaintiffs have alleged is the Census Bureau informed them completion of the ACS is required by law. There is no specific threat that the Census Bureau or the DOJ intends to prosecute the Plaintiffs, or any individual for that matter. Defendants' failure to disavow enforcement of § 221(a) is also not sufficient here to infer a credible threat of prosecution. Courts have repeatedly made clear that the existence of a proscriptive statute is not sufficient for ripeness. See *Wolfson*, 616 F.3d at 1058; *Thomas*, 220 F.3d at 1139.

        c. <u>History of Enforcement</u>

The third *Thomas* factor, history of enforcement under the act, lends little support to Plaintiffs' claims. Defendants assert, and Plaintiffs do not rebut, that no one has ever been prosecuted for failure to complete the ACS. (Dkt. No. 22-1 at 7.) Indeed, it has been more than

50 years since anyone was prosecuted for failure to complete a long-form census or its equivalent. (*Id.*) Such a paucity of enforcement is precisely what the Ninth Circuit in *Thomas* found to be insufficient for a claim to be ripe. *See Thomas*, 220 F.3d at 1140–41.

Plaintiffs assert the failure to complete the ACS poses the risk of criminal liability supports a finding of ripeness as to the third *Thomas* factor. To support this assertion, they cite *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) and argue the Supreme Court rejected the idea that a previous failure to enforce criminal penalties indicates a case is not ripe. However, this fails to represent the context of the Court's holding. In *Babbitt*, the criminal law at issue had been in effect for only a few years and was subject to substantial litigation in the aftermath of its enactment. *Id.* at 292–96. It was based on this limited history the Court rejected appellants' argument the case was not justiciable because "the criminal penalty provision has not yet been applied and may never be applied to commissions of unfair labor practices." *Id.* at 302. Here, by contrast, there is a record of over 50 years of non-enforcement of the law requiring parties to complete the ACS or long-form census. Additionally, as Defendants correctly point out, the Ninth Circuit in *Thomas* found a 25-year long failure to enforce criminal provisions indicative that enforcement was not imminent. *See Thomas*, 220 F.3d at 1140.

        d. <u>Other Alleged Injuries</u>

Plaintiffs' fallback argument is also unpersuasive. Plaintiffs briefly argue the case is ripe because they have suffered an economic injury-in-fact. (*See* Dkt. No. 26 at 41.) Plaintiffs note "they have spent time, effort, and money to review instructions, search personal records, and collect relevant information." (Dkt. No. 26 at 41; *see also* Dkt. Nos. 27 at 3; 28 at 2.) Plaintiffs correctly note an economic injury is sufficient for standing and is evaluated under a separate framework from *Thomas*. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir.),

*opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).  However, "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  Nor is there any evidence Plaintiffs are suffering a present, ongoing economic injury that could be redressed by this Court.  Plaintiff Murphy alleges only that "I have already spent time and money to figure out what my rights are." (Dkt. Nos. 27 at 3.)  Plaintiff Huddleston, similarly, asserts he has "spent time, money, and effort to protect my rights." (Dkt. No. 28 at 2.)  Both Plaintiffs assert they will not complete the ACS (Dkt. Nos. 27 at 3; 28 at 2), so they cannot logically be faced with any ongoing costs of compliance with the survey.

In sum, Plaintiffs have not presented evidence of a specific threat the Defendants will prosecute Plaintiffs for failure to complete the ACS.  Defendants, by contrast, have presented uncontroverted evidence of a long history of non-prosecution under the statute.  This evidence indicates there is no imminent threat of prosecution and Plaintiffs' fear of such an outcome is not reasonable. As such, the Court finds Plaintiffs' dispute with Defendants is not justiciable.

**2. Prudential Component**

Even were the Court to conclude Plaintiffs satisfied the constitutional component of ripeness, prudential considerations weigh against hearing Plaintiffs' claims.

"While 'pure legal questions that require little factual development are more likely to be ripe,' a party bringing a preenforcement challenge must nonetheless present a 'concrete factual situation . . . to delineate the boundaries of what conduct the government may or may not" constitutionally regulate. *Alaska Right to Life Pol. Action Comm.*, 504 F.3d at 849.  The claims presented by Plaintiffs are predominantly legal ones—namely, whether the Census Bureau has the statutory authority to compel Americans to complete the ACS, whether such authority

constitutes an impermissible delegation of legislative powers to a federal agency, and whether requiring Americans to answer the ACS constitutes compelled speech in violation of the First Amendment.  However, absent any imminent or actual threat of enforcement Plaintiffs have presented "generalized grievance[s] that would impermissibly require the Court to 'decide constitutional questions in a vacuum.'" *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1135 (C.D. Cal. 2012).

*National Audubon Society*, cited by Plaintiffs in support for their argument that their claims are fit for judicial resolution, is distinguishable as well.  The Ninth Circuit in *National Audubon Society* held the plaintiffs' claims fit for judicial resolution because "[t]he trappers' injury *is established*, and the legal arguments are as clear as they are likely to become." *Nat'l Audubon Soc'y*, 307 F.3d at 857.  Specifically, the trappers in the case were experiencing actual, ongoing economic harm because of the environmental law at issue.[1]  Here, as previously discussed, Plaintiffs have not established they have suffered an actual injury in fact and their pre-enforcement challenge fails to meet the *Thomas* factors.  Plaintiffs thus ask the Court to decide generally whether the Census Bureau has the authority to compel responses to the ACS, which this Court may not do.  "Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas*, 220 F.3d at 1138.

Additionally, Plaintiffs have not established they will suffer significant hardship if the Court withholds a decision on their claims.  "The hardship analysis of our ripeness jurisprudence

---

[1] The law at issue prohibited the use of leghold traps when trapping fur-bearing and non-game animals.  The trappers asserted they "privately trapped with leghold traps; engaged in interstate commerce in furs; used leghold traps to protect crops and livestock; worked as trappers for Animal Damage Control (under the USDA); and trapped as independent contractors for the state to protect levees." *Id*. at 845.  These allegations supported the trappers' alleged economic injuries.

dovetails, in part, with the constitutional consideration of injury. Although the constitutional and prudential considerations are distinct, the absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142.

Ultimately, the Court finds Plaintiffs' claims too remote to justify the exercise of jurisdiction. Mindful of our limited jurisdiction and in an effort to avoid issuing an unconstitutional advisory opinion, the Court finds Plaintiffs' claims are not ripe for resolution at this time and that Defendants are entitled to summary judgment as a matter of law.

## IV   CONCLUSION

Accordingly, and having considered the parties' cross-motions for summary judgment (Dkt. Nos. 22, 26), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS:

1. Defendants' motion for summary judgment (Dkt. No. 22) is GRANTED as Plaintiffs' claims are not ripe.
2. Plaintiffs' cross-motion for summary judgment (Dkt. No. 26) is DENIED.
3. Plaintiffs' claims are DISMISSED without prejudice.
4. Plaintiffs' motion for class certification (Dkt. No. 12) is DENIED as moot.

Dated this 3rd day of January, 2023.

David G. Estudillo
United States District Judge